## Corbin, Appellant, *v.* M. Wilson & Son.

Argued May 4, 1966. Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

352

*Edwin E. Naythons*, with him *Freedman, Borowsky and Lorry*, for appellant.

*Victor L. Drexel*, with him *Pepper, Hamilton & Scheetz*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 24, 1966:

Sylvester Corbin, a 40-year-old laborer, was injured when bricks cascaded upon him while working on a building-wrecking job in the "Mall Project" in Philadelphia. He brought suit against M. Wilson & Son, the firm which owned a crane, whose operator, Corbin claimed, so negligently operated the machine as to cause the accident in controversy, and obtained a verdict of $27,000.* Wilson & Son, hereinafter to be referred to as the Wilson firm, moved for judgment n.o.v. and a new trial. It later withdrew the motion for judgment n.o.v. and pressed for a new trial. The trial judge sat as a single judge *court en banc* and ordered a new trial, enumerating reasons. The plaintiff appealed.

---

* The defendant brought in Werner Wrecking Company, the plaintiff's employer, as an additional defendant but later released it from all liability.

On July 6, 1959, the plaintiff was working on the fourth or fifth floor of a building at Sixth and Arch Streets. He went down to the third floor to obtain a drink of water and on his return, as he climbed the stairs, called out to the crane operator to "Hold it I'm coming up". A co-worker, William James, communicated Corbin's cry to the crane operator, Bill, by a hand signal. He demonstrated the hand signal in court. The operator ignored the signal and cry, pulled his levers, the boom of the machine tore into the bowels of the structure, setting off an avalanche of bricks, engulfing the plaintiff, and bringing serious injury to his left hand.

It was the Wilson firm's defense throughout the trial that it was not their crane which had been involved in the plaintiff's accident. The president of the firm, however, admitted that it had three cranes operating on the project. One of these cranes was identified by two of Corbin's co-workers.

In his opinion ordering the new trial the trial judge pointed to several matters of fact which, in every instance, had been decided by the jury. He said that since the plaintiff was an experienced construction worker he was guilty of contributory negligence because he should not have come up the stairs without first determining he could do so in safety. The court did not indicate what Corbin should have done, or how he did not exercise prudence. Corbin called out that he was on his way back to his job and to hold everything. The method of communicating with the crane operator was by voice and by hand signals. Both methods were employed. Even the defendant firm did not charge the plaintiff with contributory negligence. Indeed, after having filed a motion for judgment n.o.v., it withdrew that motion which it certainly would not have withdrawn had it believed the evidence proved Corbin guilty of contributory negligence.

Moreover, the trial judge charged at length on the subject of contributory negligence, clearly stating to the jury: "If he [the plaintiff] was in any way contributorily negligent, he is not, under the law, entitled to recover."

The trial judge stated in his opinion that no signal was given to the crane operator. This statement is not borne out by the record, as already pointed out above. The trial judge said that, in a prior deposition, the plaintiff had said the accident occurred when the fifth floor was being removed but that at the trial, he said it was the fourth floor. The demolition process began with the roof and proceeded groundward. Thus, with the roof of the building gone and with girders, beams and other structural features being skeletonized amid dust, dirt and debris, one could easily mistake the fourth for the fifth floor, or vice versa. Anyhow, it didn't matter where the bricks bombarded Corbin if he was injured through the negligence of the defendant's operator. And, still further, the whole matter of locus in quo, method of procedure in wrecking operations, activity of the plaintiff and his co-workers were submitted to the jury in a very clear, ample and unmistaking charge. After considering the evidence from roof to ground floor, the jury returned a verdict on credibility of witnesses, verisimilitude of testimony, and burden of proof, and reached the conclusion of negligence on the part of the defendant, excluding contributory negligence.

What the trial judge has done, in his opinion, is to give his version of the accident, what he believed and did not believe, and then arrive at conclusions of his own. He, of course, may do this, but he may not upset the due determination of a jury without any indication, which he did not present, of perversity, misunderstanding, caprice or prejudice on the part of the jury.

The trial judge stated that there was a variance in the oral description of the crane by the plaintiff and two witnesses after they had seen a photograph of a crane owned by the defendant. Regardless of variance, if there was such, which, of course, was also passed on by the jury, the fact remains that the crane was identified in the plaintiff's case. L. T. Anderson testified: "Q. Where was the crane located? A. The crane was seated, I guess, about 20 feet in the front of the building, from the rear. Q. Where you were? A. Yes. Q. Describe the crane. A. Red, Black, white lettering on it, 'Wilson & Son' written on it. Q. Are you certain it was 'Wilson & Son' written on it? A. Yes. Q. Is there any doubt in your mind? A. No. Q. Do you know the crane operator's name? A. Bill. Q. Bill? A. Yes. Q. Had you seen him on the job before this period of time, on this particular job? A. Yes, I had seen him, yes."

The trial judge complains because the plaintiff was not present in the courtroom on the final day of the taking of testimony, but certainly this cannot be a reason for ordering a new trial. Defendant's counsel had made no request that the plaintiff remain in the courtroom. In addition, if defendant's counsel desired to cross-examine the plaintiff further, the plaintiff was available to him several days for that purpose.

Prior to the taking of testimony, plaintiff's counsel moved to amend his complaint with regard to the actual situs of the accident. The trial judge authorized the amendment. Defendant's counsel did not complain after the trial that the granting of the amendment had prejudiced his client's case. In any event, the plaintiff was in no way surprised by the contents of the amendment, and there is no indication that it was prejudiced by the amendment in the presentation of its case or in the cross-examination of plaintiff's witnesses.

The trial judge says there was no evidence as to where the plaintiff was when he was injured. The plaintiff testified very clearly that he had left the third floor, where he had consumed some drinking water, and was on his way up to the fourth floor, using the stairs, when he yelled: "Hold it, I'm coming up." The trial judge asks where the plaintiff was when he was injured. Obviously he was on the stairs between the third and fourth floor. How much more objective did the plaintiff have to be?

At the end of his opinion the trial judge said: "The court is persuaded by many other facets of the case that justice required the granting of a new trial." Since the court endeavored to be specific as to the reasons for ordering a new trial, it is not enough now to say that there are "many other facets" requiring a new trial. "Many other facets" is too ambiguous a term to guide an appellate court into ascertaining what is in the trial judge's mind. We can assume that, by enumerating certain reasons, the trial judge intended those to be the main outstanding fundamentals on which his order is based. Since all those reasons, upon analysis, prove to be a collapsing stair on which to climb to a just and legal cause for so monumental a decision, as ordering a new trial, we must assume that the "many other facets" mentioned are also stairs of sand.

In *McArthur v. Balas*, 402 Pa. 116, we said: "Under the circumstances and for the reasons hereinbefore stated, the award of a new trial as to Balas was an abuse of discretion by the court below."

We so hold here.

Order reversed with direction that judgment be entered on the verdict.

Mr. Justice COHEN dissents.